UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------ x
UNITED STATES OF AMERICA,            :
                                     :        19-cr-354 (JSR)
          -v-                        :
                                     :
CHRISTIAN NIEVES,                    :        MEMORANDUM
      a/k/a "Eric Rosario" and       :
                                     :
ELIAS POLANCO,                       :
                                     :
          Defendants.                :
------------------------------------ x

JED S. RAKOFF, U.S.D.J.

        The defendants in this case -- Christian Nieves and Elias

Polanco -- are charged in a four-count indictment with substantive

and conspiratorial counts of witness tampering and retaliation.

The charges stem from an incident in which a witness in a prior

federal prosecution, Miguel Carela, was slashed across the neck,

and, the following day, warned against further cooperation with

the Government. By bottom-line Order dated March 29, 2021, the

Court: (1) denied Nieves' motion to suppress Carela's

identification of Nieves as the slasher; (2) granted Polanco's

motion to suppress Carela's identification of Polanco at or near

the scene of the attack; (3) denied the defense's renewed motion

to dismiss Counts Two and Four of the indictment; and (4) denied

Polanco's renewed motion for a <u>Franks</u>[1] hearing. This memorandum explains the reasons for those rulings.

## BACKGROUND

### I.   Factual Background[2]

On the evening of February 5, 2019, Carela, a former member of the Trinitarios gang, was attacked while walking in the Bronx. He was approached by two men, whom he allegedly recognized as Nieves and Polanco, themselves members of the gang. The men called him a rat and warned him to watch out. Nieves then slashed Carela across the neck. The incident was captured on surveillance video. After the attack, the two men walked in the direction of the camera. The man initially alleged to be Polanco was wearing a gray hooded sweatshirt. The next day, Carela received a phone call, allegedly from Nieves and Polanco, warning him against further cooperation with the Government.

### II.   Procedural Background

On May 14, 2019, Nieves and Polanco were charged in a four-count indictment. Dkt. No. 1. Counts One and Three accuse Nieves

---

[1]   <u>See</u> <u>Franks v. Delaware</u>, 438 U.S. 154 (1978) (requiring district courts to hold an evidentiary hearing where defendant makes a substantial preliminary showing that the police procured a warrant to search his property with deliberate or reckless misrepresentations in the warrant affidavit, and where such statements were necessary to the finding of probable cause)

[2]   This background is largely drawn from the Memorandum Opinion and Order dated March 30, 2020 ("Mem. Order"), Dkt. No. 34.

of retaliating against and tampering with a former federal witness in violation of 18 U.S.C. §§ 1513(b)(1) and 1512(b)(3), respectively, and Counts Two and Four accuse the defendants of conspiring to commit the same, in violation of 18 U.S.C. §§ 1513(f) and 1512(k). The indictment was unsealed on May 16, 2019, and Polanco was arrested, presented, and arraigned that same day. Dkt. No. 6. Polanco thereafter filed motions to dismiss the indictment, for a Wade[3] hearing to suppress Carela's identification of Polanco, and for a Franks hearing to suppress evidence taken from Polanco's cellphone. Dkt. No. 18. Judge Swain, to whom the case was then assigned, granted the unopposed motion for the Wade hearing but denied the motions to dismiss the indictment and for a Franks hearing. Dkt. No. 34. The case was reassigned to the undersigned on June 2, 2020.

Nieves, who had been at large, was brought into federal custody on November 5, 2020, when he was presented and arraigned. Dkt. No. 39. He filed his pretrial motions on January 27, 2021. Dkt. No. 48.[4] Trial is now firmly set for April 14, 2021.

---

[3]    See United States v. Wade, 388 U.S. 218 (1967) (authorizing district courts to hold an evidentiary hearing to determine whether pretrial identification procedures improperly tainted an eye-witness' identification).

[4]    Nieves' other pretrial motions were largely denied. See Dkt. Nos. 59, 64, 69, 71.

-3-

As these pretrial motions were being briefed, the Government informed the defense that it no longer believed that Polanco "is the individual wearing the gray hooded sweatshirt who appears in the surveillance videos." Letter from the Government to Defense Counsel dated February 11, 2021 ("Gov. Letter to Defense"), Dkt. No. 62-1. Accordingly, the Government "concluded that it could not prove beyond a reasonable doubt that, prior to the slashing, an agreement existed between Nieves and Polanco to engage in witness retaliation." Government's Opposition to Defendant Christian Nieves's Pretrial Motions ("Gov. Opp. to Nieves"), Dkt. No. 50, at 5 n.4. Accordingly, the Government indicated that it did "not intend to proceed with Count Two of the Indictment . . . as to either defendant." Gov. Letter to Defense.

## MOTIONS TO SUPPRESS

Carela purportedly identified both Nieves and Polanco as participants in the alleged attack against him through separate single-photograph procedures. They both moved to suppress those identifications as irreparably unreliable and therefore violative of their due process rights. See Dkt. Nos. 18 & 48. The Government consented to a Wade hearing, which occurred on March 24, 2021.

## I.  Legal Framework

"When the prosecution offers testimony from an eyewitness to identify the defendant as a perpetrator of the offense, fundamental

-4-

fairness requires that that identification testimony be reliable."
Raheem v. Kelly, 257 F.3d 122, 133 (2d Cir. 2001). To determine
the reliability and admissibility of identification testimony,
courts undertake a two-part inquiry. First, the Court determines
whether the identification procedure unduly and unnecessarily
suggested that the defendant was the perpetrator. Id. If not, there
is "no due process obstacle to admissibility." Id. But if there
was suggestivity, a court "must then determine whether the
identification was nonetheless independently reliable." Id.

## II.  Discussion

### A. Identification of Nieves

At the Wade hearing, Carela testified that on the evening of
February 5, 2019, he was walking on the sidewalk along Grand
Concourse in the Bronx when he saw three individuals -- whom he
recognized as "White Boy", "Ala," and a man he knew as "Tom" --
along with approximately two other individuals he did not
recognize, gathered on the steps of a building, about 10 to 15
feet away from where he was walking. Tr. at 12:20-24, 14:15-20,
17:7-16. One of them called out to him as he walked by. Id. at
14:21-25. After he walked past them, Carela "could tell [he] was
being followed." Id. at 18:21-23. Frightened, he stopped under a
nearby building. Id. at 18:16-17. In the reflection of his phone,
he saw White Boy. Id. at 18:10-12. When Carela turned around, he

-5-

found White Boy, who called him a rat and slashed him across the neck. Id. at 18:10-12, 19:3-18.

Following the attack, Carela made his way to the hospital for medical treatment. Id. at 19:22-24. There, Carela told Detective Gregory Santana that White Boy had slashed him. Carela identified White Boy as a "White Hispanic" man and a member of the Trinitarios gang. Id. at 105:22-106:1; DX 3504-01. Using that information, Detective Santana conferred with another detective and ran a computer check. Tr. at 99:12-20; DX 3504-01. After determining that Eric Rosario (an alias of Nieves) was potentially the true name for White Boy, he showed Carela a single photograph of Nieves. Tr. at 94:18-20. Carela then identified the photo of Nieves as the "White Boy" who had slashed him. Id. 21:11-12.

Nieves seeks to exclude Carela's identification of him as the person who slashed him on February 5, 2019. Although the Second Circuit has "consistently condemned the exhibition of a single photograph," Wiggins v. Greiner, 132 Fed. App'x 861, 865 (2d Cir. 2005) (summary order), "courts in this circuit have held that identification procedures consisting of the display of a single photograph to a witness who states that the witness already knows the perpetrator, in order to confirm the perpetrator's identity, are not unduly suggestive," United States v. Jimenez, No. 20-cr-122 (LTS), 2020 WL 7231062, at *2 (S.D.N.Y. Dec. 8, 2020). Nieves

argues that Carela's identification was nevertheless unduly suggestive because there is insufficient evidence to conclude that Detective Santana's identification procedure was actually confirmatory since Carela did not provide Detective Santana with a "prima face basis illustrating how or why he recognized his assailant and knew him as a 'White Boy.'" See Letter from Andrew Dalack to the Court dated March 27, 2021, Dkt. No. 65, at 2.

The Court finds that the identification of Nieves was a confirmatory identification and therefore denies the motion to suppress. The police reports, along with the testimony of Carela and Detective Santana at the Wade hearing, demonstrate that Carela already knew "White Boy" from significant prior contact through the Trinitarios gang. The record also demonstrates that the single photo of White Boy was displayed to Carela in order to determine whether the person he knew as "White Boy" was the person known to police records as Nieves. Nieves' focus on whether Detective Santana had a "prima facie" basis to conclude that White Boy was Nieves before showing Carela a single photograph of Nieves is misplaced. "[I]t is the reliability of the witness's identification of the man in the photo as the ["White Boy"] he said he knew, and not the reliability of the officers' belief, that is relevant to the Court's inquiry." Jimenez, 2020 WL 7231062, at *2 n.4. Because Carela indicated that he well knew the slasher

from prior contact, the confirmatory identification procedure was not unduly and unnecessarily suggestive.[5]

## B. Identification of Polanco

Following Carela's identification of Nieves, Detective Santana registered Nieves as a suspect in the slashing, prompting an automatic notification to Detective John Ambrosino, who had been previously assigned to locate Nieves in connection with an outstanding parole warrant. Tr. at 119:18-120:1. The day after the attack, Carela told Detective Ambrosino "that he was receiving threatening text messages telling him not to cooperate with law enforcement," and sent him screenshots of those exchanges. Id. at 112:11-14. Under the belief that the text messages were from Nieves, Detective Ambrosino traced the phone number to an apartment in the Bronx. Id. at 114:6-22. On February 7, 2021, Detective Ambrosino visited that apartment, where he found Polanco and his girlfriend. Id. at 115:9-23. Although Detective Ambrosino's testimony on how he first identified Polanco is somewhat murky, he was able to procure a picture of Polanco. Id. at 115:18-21. Detective Ambrosino then sent a single photograph of Polanco to

---

[5]   Because the Court holds that the identification procedure was not unduly and unnecessarily suggestive, the Court does not decide whether Carela's identification has independently reliability, as the credibility of his testimony is a matter for the jury to determine at trial. See Jarrett v. Headly, 802 F.2d 34, 42 (2d Cir. 1986).

Carela. Dkt. No. 19-1. The two had the following text message exchange:

**Detective Ambrosino**: Do you know this guy?

**Carela**: Yea

**Detective Ambrosino**: He is a friend of Eric?

**Carela**: Yea. Ala.

**Detective Ambrosino**: Was he there when Eric robbed you?

**Carela**: Yea. He been texting me threating me [sic]. He called me more than 10 times yesterday.

**Detective Ambrosino**: Ala was there when Eric slashed you?

**Carela**: Yea.

**Detective Ambrosino**: Ok.

**Carela**: He wad behing him. Did you guys seen the video or ya havent? [sic].

The Government initially indicated that Carela would testify "that Polanco and Nieves followed him, called him a rat, and told him to watch out for when they see him again" before Nieves slashed Carela in the neck. See Government's Opposition to Defendant Elias Polanco's Pretrial Motions, Dkt. No. 22, at 4. As mentioned, however, the Government has since informed the defense that it no longer believes that Polanco was one of the two men captured in the surveillance video close to the slashing when it took place. See Gov. Letter to Defense; see also Tr. at 4:7-14. Nevertheless,

at the <u>Wade</u> hearing, the Government indicated that it still "credits [Carela's] expected testimony that prior to the slashing, he walked past both Nieves and Polanco and was able to see them prior to the incident that took place." <u>Id.</u> at 4:11-14. Accordingly, Polanco seeks to suppress Carela's identification of Polanco on the steps of the building before the slashing occurred. <u>See</u> Letter from Camille M. Abate to the Court dated March 27, 2021 ("Polanco Letter"), Dkt. No. 66, at 1.

### 1. Step One -- Unduly Suggestive

Polanco argues that Carela's identification was based on an unduly suggestive single-photographic display. <u>See</u> Polanco Letter at 3. The Government responds that because Detective Ambrosino did not ask whether the man in the photograph was involved in the attack until after determining that Carela knew him, it was not an unduly suggestive identification procedure. Letter from the Government to Court dated March 27, 2021 ("Gov. <u>Wade</u> Letter"), Dkt. No. 67, at 4.

The Court finds that the identification procedure was unduly suggestive. Detective Ambrosino showed Carela a single photograph of Polanco before Carela had indicated to Detective Ambrosino that there was a second person involved in the attack, let alone that he recognized that second person. <u>See</u> DX 3504-01 (naming only "White Boy" in the initial police report). Therefore, Detective

Ambrosino's exhibition of a single photograph was unduly suggestive.

### 2. Step Two -- Independent Reliability

Even where, as here, a pretrial identification procedure was unduly suggestive, "a court may nonetheless admit in-court identification testimony if the court determines it to be independently reliable." See United States v. Wong, 40 F.3d 1347, 1359 (2d Cir. 1994). "That determination turns on an assessment of the totality of the circumstances, particularly those factors identified in Neil v. Biggers, 409 U.S. 188, 199-200 (1972), specifically, (1) a witness's opportunity to view a criminal during the crime, (2) the witness's degree of attention, (3) the accuracy of any prior description of the criminal by the witness, (4) the level of certainty demonstrated by the witness at the time of the confrontation, and (5) the length of time between the crime and the confrontation." Wiggins, 132 Fed. App'x at 865.[6]

Polanco argues that the Biggers factors weigh in favor of suppression. Emphasizing the first, third, and fourth factors, he argues that Carela quickly walked past Polanco, had not given a

---

[6]    These factors have been criticized as being insufficiently attuned to what we now know as the frailties of eyewitness perception and memory, but they are still good law. See generally National Research Council, Identifying the Culprit: Assessing Eyewitness Identification (2014), 31-44 and passim.

prior description of Polanco prior to the identification, and had initially wrongly identified Polanco as having been the man following behind Nieves immediately prior to the slashing. Polanco Wade Letter at 4-5. For its part, the Government does not directly address the Biggers factors but simply emphasizes that Carela knows Polanco well enough to ensure that his identification has independent reliability. Gov. Wade Letter at 4.

The Court finds that Carela's identification of Polanco lacks independent reliability and therefore grants the motion to suppress. Especially relevant here is the fourth Biggers factor. Carela has already misidentified Polanco in connection with this case as the man walking behind Nieves immediately prior to the slashing. In fact, Carela persists in that misidentification, having recently testified at the Wade hearing, for example, that he saw Polanco not only on the steps before the attack but also "following behind [him] along with [Nieves]." Tr. at 64:19-21. The Court has no reason to believe that Carela's identification of Polanco on the steps is any more reliable than his mistaken identification of Polanco as one of the men following him soon thereafter. Due process therefore requires its suppression.

C. **Identification of Voices in Telephone Calls**

Separate and apart from Carela's eyewitness identification of Nieves and Polanco at or near the scene of the attack, Carela is

also expected to testify that he recognized their voices on the
telephone the following day warning him against further
cooperation with the Government. The defense did not expressly
move to suppress this testimony, even though the Court directed
the defense to specify what exactly it was seeking to suppress.
See Transcript dated March 25, 2021 at 3:4-5 ("I want to make sure
I understand exactly what the defense counsel are seeking to
suppress at this time.").

Nevertheless, to the extent that Nieves or Polanco seek to
suppress Carela's identification of their respective voices on the
telephone call, the motions are denied. For one thing, the defense
has not identified any suggestive practice by law enforcement with
respect to Carela's identification of their voices. For that reason
alone, suppression is unwarranted. Moreover, even assuming
arguendo that Detective Ambrosino's unduly suggestive
identification procedure tainted not only Carela's identification
of Polanco at the scene of the crime, but also Carela's
identification of Polanco's voice on the telephone, the latter
identification is independently reliable. In one of the text
messages that immediately preceded the phone calls, the sender
identified himself by reference to Polanco's nickname: "Ala." See
Tr. at 24:2:6. That text message lends independent reliability to

-13-

Carela's identification of Polanco's voice on the subsequent telephone call.

### RENEWED MOTION TO DISMISS

In November 2019, Polanco moved to dismiss Counts Two and Four of the indictment, arguing that the Government's evidence was so weak that proceeding to trial upon the factual record before the Court would violate his due process rights under the Fourteenth Amendment. See Mem. Order at 3-4. Judge Swain denied that motion, holding that the sufficiency of the evidence is not appropriately addressed on a pretrial motion to dismiss an indictment. Id.

On March 18, 2021, the Government informed the defense that, during a recent meeting with Carela, Carela stated that he could not recognize Nieves's voice and did not recall whether Nieves was on the phone along with Polanco the day after the attack. See Renewed Motion to Dismiss Counts Two and Four of the Indictment ("Motion to Dismiss"), Dkt. No. 62, at 5. Following this disclosure, the defense renewed its motion to dismiss Counts Two and Four, arguing that the Government could not prove that Polanco and Nieves conspired to commit witness tampering as charged in

Count Four, and that allowing the Government to proceed on that count would violate due process. Id. at 1-2.[7]

The renewed motion to dismiss the indictment is denied. The indictment is sufficient because "it, first, contains the elements of the offense charged and fairly informs a defendant of the charge against which he must defend, and, second, enables him to plead an acquittal or conviction in bar of future prosecutions for the same offense." Hamling v. United States, 418 U.S. 87, 117 (1974). The defense's arguments about the weight of evidence or the credibility of the Government's witnesses must be directed to the jury.[8]

## RENEWED MOTION FOR A FRANKS HEARING

In November 2019, Polanco also moved for a Franks hearing on the ground that a search warrant for Polanco's phone was secured by a knowingly or recklessly false statement in the warrant affidavit where the affiant, Agent Peter Cullen, stated that the person in the grey hooded sweatshirt captured in the surveillance

---

[7]    Because the Government has represented that it no longer intends to proceed on Count Two, the motion to dismiss that count is denied as moot.

[8]    The defense also cites United States v. Wallach, 935 F.2d 445 (2d Cir. 1991), where the Court of Appeals reversed a conviction because a witness perjured himself on the stand. Here, the defense points to inconsistencies in Carela's testimony, not to evidence of perjury. In any event, even if there were reason to believe that Carela were perjuring himself, the proper remedy would be to exclude his testimony, not to dismiss the indictment.

video was Polanco. Dkt. No. 20. Judge Swain denied the motion. Mem. Order at 8. Quoting from the search warrant text, Judge Swain noted that Agent Cullen "explicitly disclaim[ed] sure knowledge of identity, qualifying the identification of the man as one 'who appear[s] to be . . . Elias Polanco' because his face is 'partly obscured.'" Id. at 7 (quoting Agent Affidavit in Support of Application for Search and Seizure Warrant, Dkt. No. 62-2, ¶ 8).

Polanco argues that the Court should now reconsider that decision in light of the Government's recent concession that Polanco was not, in fact, the person in the grey hooded sweatshirt captured in the surveillance video. Renewed Motion for a Franks Hearing, Dkt. No. 55, at 3. Polanco also suggests that Carela is not a credible witness and that Agent Cullen should have known as much. Id. at 6. To obtain a Franks hearing, however, "a defendant must make a substantial preliminary showing that: (1) the claimed inaccuracies or omissions are the result of the affiant's deliberate falsehood or reckless disregard for the truth; and (2) the alleged falsehoods or omissions were necessary to the judge's probable cause finding." United States v. Salameh, 142 F.3d 88, 113 (2d Cir. 1998) (per curiam). To demonstrate that an affiant exhibited reckless disregard for the truth, a defendant must prove that the affiant in fact entertained serious doubts as to the truth

of their allegations. See United States v. Rajaratnam, 719 F.3d 139, 154 (2d Cir. 2013).

The Court denies Polanco's renewed motion for a Franks hearing. The Court agrees with Judge Swain's conclusion that Agent Cullen's "statement cannot be fairly read to assert that Agent Cullen entertained no doubt that Polanco is the man in the video. Rather, it explicitly disclaims sure knowledge of identity, qualifying the identification of the man as one 'who appear[s] to be . . . Elias Polanco' because his face is 'partly obscured.'" Mem. Order at 7. That Agent Cullen was ultimately mistaken does not mean that he was lying or reckless in concluding that one of the men in the video appeared to be Polanco. Because Polanco has offered no additional evidence to show that Agent Cullen in fact entertained serious doubts as to the truth of his allegations, the renewed motion for a Franks hearing is denied.[9]

CONCLUSION

For the foregoing reasons, the Court, by an Order dated March 29, 2021, (1) denied Nieves' motion to suppress Carela's identification of Nieves as the slasher; (2) granted Polanco's

---

[9]   Because the Court denies the renewed motion for a Franks hearing for failure to demonstrate the presence in the affidavit of a knowingly or recklessly false statement, the Court does not address whether such a statement was material to the probable cause determination.

motion to suppress Carela's identification of Polanco at or near the scene of the attack; (3) denied the defense's renewed motion to dismiss Counts Two and Four of the indictment; and (4) denied Polanco's renewed motion for a Franks hearing.

Dated:   New York, NY

April 1, 2021

_____
JED S. RAKOFF, U.S.D.J.